# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:03-CR-05453 JLT |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 28 U.S.C. § 3582(c)(1)(A) |
| v. | |
| RITO ZAZUETA, | (Docs. 519) |
| Defendant. | |

Rito Zazueta is a federal prisoner moving for compassionate release under 28 U.S.C. § 3582(c)(1)(A). (Doc. 519.) He asks that this Court reduce his sentence to time served, stating that he no longer qualifies for a sentencing enhancement pursuant to 21 U.S.C. § 851. (*Id*. at 11-12.) The Government opposes Zazueta's motion, arguing that "he does not meet the 'extraordinary and compelling' standard of 18 U.S.C. § 3582(c)(1)(A)." (Doc. 527 at 1.) Zazueta did not file a reply. For the reason explained below, the motion is **DENIED**.

## BACKGROUND

In 2003, Zazueta and his co-defendants negotiated to purchase 100 cases of pseudoephedrine pills, a necessary component in manufacturing methamphetamine. (PSR at 23.) This amount of pseudoephedrine is sufficient to produce 183 pounds of methamphetamine. (*Id*. at 12.) Zazueta met with a confidential source to purchase the pills and was armed with a loaded Baretta 9-millimeter handgun at the time. (*Id*. at 23.) He also carried a fully loaded magazine in

his pocket. *Id*. When he was arrested, agents served a search warrant at the home of vehicle owner, in which Zazueta was a passenger, and found MSM, a common cutting agent used in methamphetamine production, other evidence related to the manufacture of methamphetamine, and a handgun. (PSR at 23.) At the time, he was a member of the Norteño gang. (PSR at 18.)

Petitioner was convicted of three counts and plead guilty to one count: Count 1, Conspiracy to aid and abet the manufacture of methamphetamine and to possess pseudoephedrine knowing it was to be used to manufacture methamphetamine; Count 2, attempted possession of pseudoephedrine knowing it was to be used to manufacture methamphetamine; Count 3, Possession of a Firearm in Furtherance of a Drug-Trafficking Crime; and Count 4, Deported Alien Found in the United States[1]. (Doc. 519-1 at 2) In Petitioner's Presentence Investigation Report, the United States Probation Office determined Petitioner's total offense level to be 38, based on the quantity of actual methamphetamine involved in the case (approximately 183 pounds) for Counts 1, 2, and 3, which were grouped together pursuant to section 3D1.2(d) of the United States Sentencing Guidelines. PSR ¶ 33-38. Regarding Count 4, Probation found an adjusted offense level of 16, based on a base offense level of 8, pursuant to USSG § 2L1.2 and an 8-point enhancement pursuant to USSG § 2L1.2(b)(1)(a)(i)[2], because Petitioner had been previously deported after an aggravated felony conviction. *Id*. ¶¶ 42-44. Probation recommended a 420-month term of imprisonment, based on a total offense level of 38 and a criminal history category of VI. *Id*. at 20. Specifically, Probation recommended a 360-month term on Count 1 and a 240-month term on Counts 2 and 4, to be served concurrently with one another, and a 60-month term on Count 3, to be served consecutively with the term imposed for Count 1. *See id*. The Court sentenced him to 240 months on each of Counts 1, 2 and 4 and 60 months as to Count 3 to run consecutively, for a total term of 300 months. (Doc. 519-1 at 4).

By the time of this conviction, Zazueta had been convicted of transporting and selling methamphetamine in violation of California Health & safety Code § 11379. (Doc. 381 at 7)

---

[1] Petitioner plead guilty to Count 4.

[2] Because of the offense level for the grouped drug offenses, this 8-level increase as to Count 4, had no impact on the guideline range.

After serving his sentence imposed on that state charge, he was removed from the country on November 30, 2000. *Id*. On November 20, 2003, he was again found in this country when he was arrested on the charges, which underlay this motion.

Twenty-three years after serving his sentence and being removed from the country, on January 25, 2023, a Superior Court Judge in Merced County reduced this conviction to a misdemeanor. (Doc. 519, Ex. D-E.) The proffered reason for the requested reduction was that Zazueta's attorney represented that Petitioner did not understand that by entering a plea that this would result in his deportation. (Doc. 519-5) Notably, however, at the time he entered the plea, the court advised him that, "If you're not a citizen, you shall be deported, excluded from admission to the United States, or denied naturalization followed by a few more advisements and then specifically asked defendant Zazueta, 'Do you have a clear understanding as to what's taking place?' And he says 'yes.'" (Doc. 519-5 at 4.) Despite the argument that Petitioner did not understand the immigration consequences, the judge noted, "But it looks like Judge Dougherty informed him of the potential immigration consequences." *Id*. at 6. The colloquy continued,

> MR. CAPOZZI: Yes. He said that -- he did say that you shall be deported.
>
> THE COURT: Right.
>
> MR. CAPOZZI: But he never said, "Do you understand that you were going to be deported by pleading on this particular case?" And he only got 12 months. The purpose of this motion now is he got 30[3] years in the federal court.
>
> THE COURT: Thirty years?
>
> MR. CAPOZZI: Thirty years. And he's doing the 30 years since 2003. And he's going to be released sane time in 2027.
>
> I wanted to vacate this motion. If I can do that, I can go back to federal court, get his case reduced by five years, allow him to be deported early to Mexico. That's the purpose of this. I don't think this case is hurting anybody but Mr. Zazueta.
>
> THE COURT: The feds are going to deport him.
>
> MR. CAPOZZI: I'm sorry?
>
> THE COURT: The feds are going to deport him.
>
> MR. CAPOZZI: Oh, yeah.

---

[3] Of course, as recited above, this representation was incorrect. (Doc. 519-1 at 4)

3

1 THE COURT: Mr. Asdorian.

2 MR. CAPOZZI: And there's a detainer on his prison jacket saying he's got to go to immigration. He's going to be deported, so he's not going to be here in the united States.

3

4 MR. ASOORIAN: Yes. I don't have any issue with any of those representations counsel's making. I was just arguing that for purposes of this case and preserving this -- this plea, it seems like he was advised by the court and so --

5

6 MR. CAPOZZI: But that's not the issue.

7 MR. ASDORIAN: -- he should have had knowledge.

8 MR. CAPOZZI: The issue is under *Mejia* and *Camacho*, did he meaningfully understand that he was going to be deported, and his lawyer didn't say that he was. He didn't understand he was.

9

10 THE COURT: The transcript seems to suggest he did understand, but --

11 MR. CAPOZZI: Okay.

12 THE COURT: Submit it, counsel?

13 MR. ASDORIAN: Submit it, your Honor.

14 MR. CAPOZZI: Submit.

15 THE COURT: I'm going to reduce this to a misdemeanor, 364 days. Credit for time served.

16 MR. CAPOZZI: Okay. Good.

17 THE COURT: That work?

18 MR. CAPOZZI: I think that will be very helpful. I think it will work out.

19 THE COURT: The feds are going to do what they' re going to do.

20 *Id*. at 6-8.

21 Zazueta is currently incarcerated at USP McCreary and has an expected release date of

22 June 10, 2027. (*Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/

23 (last visited June 8, 2024).) On July 19, 2023, Zazueta moved for compassionate release under

24 18 U.S.C. 3582(c)(1)(A).

25 **LEGAL STANDARD**

26 A court generally "may not modify a term of imprisonment once it has been imposed."

27 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

28 of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

4

not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018 ("the FSA"), imprisoned defendants may bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). A defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

First, a defendant petitioning for compassionate release must exhaust administrative remedies. Once they do so, courts consider whether "extraordinary and compelling reasons warrant" the requested reduction. 18 U.S.C. § 3582(c)(1)(A) (2018). Then, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). *Id*.

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. New sentencing guidelines went into effect on November 1, 2023. *See* U.S.S.G. § 1B1.13 (last amended Nov. 1, 2023). This court refers to the Sentencing Commission's policy statement for guidance. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (Stating that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding" regarding the previous policy statement issued in 2006). The amendments contain six types of circumstances that may qualify as "extraordinary and compelling." *Id*. These are 1) the medical circumstances of the defendant, 2) the age of the defendant, 3) the family circumstances of the defendant, 4) whether the defendant was a victim of abuse while in custody, 5) other reasons that are similar in gravity to 1-4, and 6) an unusually long sentence. USSG §1B1.13, p.s. (last amended Nov. 1, 2023). If a court finds that extraordinary and compelling circumstances exist, it must then look at the § 3553 factors to determine if these support a sentence reduction. *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021).

**ANALYSIS**

**A.    Administrative Exhaustion**

Section 3582(c)(1)(A) of Title 18 of the United States Code permits an inmate to move

for compassionate release after either exhausting their administrative remedies or 30 days after they submit their request to the Warden. "[A] district court must enforce the administrative exhaustion requirement articulated in 18 U.S.C. § 3582(c)(1)(A) when the government properly invokes the requirement." *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021).

Zazueta filed a request for compassionate release to the Warden on June 14, 2023. (Doc. 519, Ex. B-1.) The Warden denied Zazueta's request on June 26, 2023. (*Id*. at Ex. C-1.) Zazueta has satisfied the administrative exhaustion requirement.

**B.     Extraordinary and Compelling Reasons**

Zazueta argues that the First Step Act's enactment entitles him to relief because 1) the sentencing guidelines are now advisory, and 2) 21 U.S.C. §§ 841(b)(1)(A) and 851 now add 5 years, rather than 10, as was the case at the time he was sentenced. (Doc. 519 at 11-12.) Zazueta further argues that because his previous felony conviction was reduced to a misdemeanor, he is not subject to a mandatory minimum under 18 U.S.C. § 841 and 851. (*Id*. at 12.) Finally, Zazueta argues that he has spent his entire life in California and that this is an extraordinary and compelling reason meriting relief. (*Id*. at 12-13.)

1. Changes in Intervening Law

Courts in this Circuit "*must* consider 'non-retroactive changes in sentencing law' when evaluating compassionate release motions brought under § 3582(c)(1)(A)." *Favela*, 2022 WL 4450496 at *11 (citing *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022)) (emphasis added). Other courts, including ones in this district, have held that changes in sentencing law, "including the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) that the U.S. Sentencing Guidelines are advisory and their application cannot be mandatory, coupled with the enactment of the FSA—can constitute extraordinary and compelling reasons that warrant compassionate release." *Id*.

However, even a significant disparity between defendant's sentence and what they would receive if sentenced today is insufficient to find extraordinary and compelling circumstances. *United States v. Newton*, No. 1:94-CR-05036-JLT, 2022 WL 3029332, at *4 (E.D. Cal. Aug. 1, 2022). Courts must also look beyond the disparity and consider other factors, such as evidence of

rehabilitation, ages at the time of conviction and now, and the percentage of the original sentence that a defendant has already served. *Id.*

Zazueta does not argue that he is rehabilitated, nor does he establish that any other factors warrant relief. As such, changes in intervening law are insufficient to support a finding of extraordinary and compelling circumstances warranting relief.

2. Previous Felony Reduction

Zazueta also argues that "[s]ince [his previous felony conviction] was reduced to a misdemeanor and the defendant sentenced to less than 1 year, [] there should not be a mandatory minimum pursuant to 21 U.S.C. § 841 and 851." (Doc. 519 at 12.) He offers no authority for this proposition, and it is contrary to law. *United States v. Diaz*, 838 F.3d 968, 975 (9th Cir. 2016) [ . . .[P]ost-conviction relief by reclassifying certain past felony convictions as misdemeanors, does not undermine a prior conviction's felony-status for purposes of § 841. California's later actions cannot change the fact that [the defendant] committed his federal offense 'after two or more convictions for a felony drug offense [had] become final.'"] Accordingly, the fact that his felony conviction has been reduced does not support his request for relief.[4]

As pointed out by the government, the guideline range was 360 months to life, and the probation officer recommended a low-end guideline range sentence of 420 months (360 months on Counts 1, 2 and 4 and the consecutive term of 60 months on Count 3). Even still, after considering the § 3553(a) factors, the Court exercised its discretion and imposed the sentence that was 10 years less than that recommended. (Doc. 528-1 at 20) The judge noted,

> The Court is here very satisfied that under 3553 that Mr. Zazueta, who has a mandatory minimum based on the information which the Court has found true of 20 years, plus the consecutive five-year sentence for a firm 300-month sentence. He is going to be very adequately punished.
>
> The additional 120 months of 10 years, the Court does not find will produce one iota more of the junst [sic], it will not provide anything but candidly punishment that the Court views as unnecessary. If Mr. Zazueta doesn't get it by now, there is no way in which he will ever be amenable to other or alternative conduct.

---

[4] Moreover, from the transcript provided, it appears that the superior court judge did not agree that the 1997 plea was not knowing and voluntary because the judge denied the request to vacate the plea. It appears also that the judge's reasoning for reducing the felony to a misdemeanor was based largely on a disagreement with the length of the sentence imposed in this case. It is this type of post hoc review by the states that the *Diaz* Court sought to guard against.

> The Court knows also that he's going to be deported, being removed from his family in California; his wife, his children, all his other relatives is going to be a very significant punishment and so that is, in this case, perhaps worse than the additional 10 years that he would receive. And the Court is, with that combination of sanctions, very confident that that will be total deterrence, and that in effect society will be insulated from any further risk of any crimes.
>
> [P]
>
> I am going to find that the sentence I am going to pronounce under 3553 is the most reasonable sentence and will achieve all the objectives of sentencing . . .

(*Id*. at 20-21)

   3.   <u>Zazueta has spent his life in California.</u>

Finally, Zazueta states that he came to the United States when he was five years old and has no connection to Mexico, where he would be deported upon his release. (Doc. 519 at 12-13.) While this is a difficult situation—once considered by the sentencing judge--the Court does not find that this constitutes a finding of extraordinary and compelling circumstances necessary to support the motion.

**C.   Consistency with the § 3553(a) Factors**

Because Zazueta's motion for compassionate release is not supported by extraordinary and compelling circumstances, the Court need not reach the § 3553(a) sentencing factors. *See Keller*, 2 F.4th at 1284 ("[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step").

## CONCLUSION

For the reasons discussed above, Zazueta's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Doc. 519), is **DENIED**.

IT IS SO ORDERED.

   Dated:   **July 19, 2024**

                                                         /s/ Jennifer L. Thurston
                                                         UNITED STATES DISTRICT JUDGE